IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| AH AERO SERVICES, LLC, dba OK3 AIR, a Utah limited liability company,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>OGDEN CITY, a municipal corporation; OGDEN CITY REDEVELOPMENT AGENCY, an agency of Ogden City; EDWARD RICH, in his official and individual capacities; MTK HOLDING, LLC, a Utah limited liability company; KEMP DEVELOPMENT, INC., a Utah corporation, d/b/a KEMP JET SERVICES; FAIR AIR, LLC, a Utah limited liability company; ROBERT L. FAIR, an individual; MELVIN T. KEMP, an individual; BRYCE GIBBY, an individual; and JOSEPH M. CONSBRUCK, an individual,<br><br>Defendants. | **ORDER**<br><br>**AND**<br><br>**MEMORANDUM DECISION**<br><br><br>Case No. 1:05-cv-66 |

This matter comes before the court on a motion for summary judgment filed by

Defendants Ogden City, Ogden City Redevelopment Agency ("the RDA"), and Edward Rich in

his official and individual capacity (collectively, "the Ogden City Defendants"), and a motion for

summary judgment filed by Defendants Fair Air LLC, Robert L. Fair and Joseph M. Consbruck

(collectively, "the Fair Air Defendants").

The Ogden City Defendants seek summary judgment on three civil rights violations alleged in the First Amended Complaint under 42 U.S.C. § 1983.  Specifically, they ask the court to dismiss the claims of violations of substantive due process, equal protection, and the First Amendment.[1]

The Fair Air Defendants seek summary judgment on the claim of intentional interference with OK3's contracts and prospective business relations.

For the reasons stated below, the Ogden City Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.  The Fair Air Defendants' Motion for Summary Judgment is DENIED.

## **FACTUAL BACKGROUND**[2]

Plaintiff AH Aero Services, LLC, dba OK3 Air ("OK3"), owns facilities at the Ogden-Hinckley Airport ("OHA"), where it operates as a full-service fixed base operator ("FBO").  "In general, a Fixed Base Operator . . . is a business at an airport that provides fuel and ground handling services to the public."  (Pl.'s Consol. Facts Opp'n to Defs.' Mot. Summ. J. ¶ 15.)  OK3 offers services such as fueling, ground handling, hangaring, maintenance, flight training, aircraft sales, aircraft charter, pilot supplies and parts.  Since purchasing the facilities in 2001, OK3 has invested approximately $150,000 to make capital improvements and has purchased four aircraft to be based at OHA.

---

[1]The Ogden City Defendants also moved for summary judgment on the Third Claim for Relief, which asserts denial of procedural due process.  But OK3 has reached a settlement agreement with a former Defendant in this case which terminated the claim.

[2]This section reflects the undisputed material facts according to the briefs, viewing disputes in a light most favorable to OK3.

In 2002 and 2003, while still operating under the name of its predecessor in interest, Great Western Aviation, Inc., OK3 fell substantially behind on lease and fee payments owed to Ogden City.  Ogden City allowed OK3 to catch up gradually on its delinquent payments until the company was no longer in arrears.  Nonetheless, in 2005, OK3 fell below its break-even point, rendering the business "essentially dead."  (AbuHaidar dep. 476, attached to Ogden City Defs.' Mem. Supp. Mot. Summ. J.)

In February of 2003, Robert Fair leased Hangar S-755 at OHA from Ogden City.  At some point in 2003—although the precise dates are not clear—Mr. Fair performed some maintenance work on aircrafts in that hangar under the name Fair Air.  In December of that year, Mr. Fair obtained premises liability insurance.

Fair Air subsequently submitted a proposal to conduct commercial operations at OHA in May of 2004, then entered into a Lease and Commercial Use Permit Agreement with Ogden City for Hangar S-755 in August of that year ("August 2004 lease agreement").[3]  (See attached as Ex. 58 to Pl.'s Opp'n Mem. to Defs.' Mot. Summ. J.)  Among other things, the August 2004 lease expressly allowed Fair Air to use the hangar to "[c]onduct commercial aircraft maintenance . . . ."  (Id. ¶ 5.)  Shortly after signing that agreement with Ogden City—still in August of 2004—Fair Air obtained products liability/completed operations insurance and hangarkeepers liability insurance, in addition to the premises liability insurance previously obtained.  Then in September of 2004, Fair Air received a business license for aircraft repair from Ogden City.  In October, Fair Air organized as Fair Air LLC ("Fair Air").  And in

---

[3]Although Fair Air did not organize as Fair Air LLC until October of 2004, the August 2004 lease agreement named Fair Air LLC as the lessee.

November, Fair Air renewed all of its insurance until December 2005.

Title 8 of the Ogden Municipal Code ("Title 8") governs all airport operations at OHA. Title 8 affords the airport manager—a position occupied by Edward Rich since 2002—the "full power to carry out the policies adopted by the City Council" and the authority "to oversee the implementation and to manage the airport subject to this Title." Title 8, § 8-1-2(B). Mr. Rich has explained that as part of his duties, he is responsible for ensuring that new operators comply with Title 8.

Title 8 also requires that commercial operators meet five requirements to conduct business at OHA:

> No person shall use any area or facility on the airport for any commercial activities without first: 1) complying with applicable City regulations; 2) obtaining a permit for the activity from the Airport Manager or signing a lease, whichever is required; 3) paying the rates and charges prescribed for that activity in Chapter 5 of this Title; 4) agreeing to indemnify the City as outlined in subsection 8-3-3D5 of this Chapter; and 5) meeting the minimum standards for the activity.

Id. § 8-3-1(A). Title 8 also establishes certain insurance requirements for commercial operators at OHA. Id. § 8-3-2. Additionally, Title 8 lays out a specific grievance procedure, allowing "[a]ny person aggrieved by a decision of the airport manager . . . [to] request a hearing before the chief administrative officer . . . ." Id. § 8-1-5.

Believing that Fair Air did not comply with all of Title 8's requirements, and believing that it was losing customers to Fair Air, OK3 complained to Mr. Rich. Specifically, OK3's Ogden location manager, Eric Hill, voiced suspicions through "numerous" conversations in 2004 that Fair Air was not fully complying with Title 8. (Hill Dep. 119, attached as Ex. 62 to Pl.'s Opp'n Mem. to Defs.' Mot. Summ. J.) Although Mr. Hill knew that several other mechanic

4

operations offered services at OHA without complying with Title 8, he never complained about these operations to Mr. Rich.  (Id. at 127-28.)  Even after complaining about Fair Air, Mr. Hill still did not complain about these other operations.  (Id.)

Nadim AbuHaidar—President and owner of OK3—met with Mr. Rich on July 27, 2004, and similarly expressed concerns about Fair Air's compliance.  (AbuHaidar Dep. 201-02, attached as Ex. 1 to Pl.'s Opp'n Mem. to Defs.' Mot. Summ. J.)  Immediately after the meeting, Mr. AbuHaidar wrote Mr. Rich a follow-up letter expressing the concerns.  (Letter from Mr. AbuHaidar to Mr. Rich (July 28, 2004), attached as Ex. 64 to Pl.'s Opp'n Mem. to Defs.' Mot. Summ. J.)  A few months after Mr. AbuHaidar's letter—on October 5, 2004—OK3's attorney wrote a letter to Mr. Rich outlining OK3's concerns about Fair Air's noncompliance.  (See Letter from Mr. Swindle to Mr. Rich (Oct. 5, 2004), attached as Ex. 65 to Pl.'s Opp'n Mem. to Defs.' Mot. Summ. J.)  Mr. Rich responded to OK3's attorney, stating that "it is the position of Ogden City Corporation that Fair Air has met or is meeting the standards of Title 8 in all regards." (Letter from Mr. Rich to Mr. Swindle (Oct. 19, 2004), attached as Ex. 66 to Pl.'s Opp'n Mem. to Defs.' Mot. Summ. J.)

After these exchanges, OK3 complained directly to the Federal Aviation Administration ("FAA"), prompting a compliance specialist with the FAA, John Bauer, to investigate Fair Air in October of 2004.  Due to what OK3 calls an "oversight," OK3 never requested a hearing as outlined by Title 8's grievance procedure.  (AbuHaidar dep. 439, attached to Ogden City Defs.' Mem. Supp. Mot. Summ. J.)

After conducting his investigation, Mr. Bauer sent Mr. Rich a letter dated December 3, 2004, identifying various Title 8 violations by Fair Air.  One such violation was that Fair Air had

conducted commercial operations at OHA from March 2003 to August 2004 without a lease or permit.  But because of the August 2004 lease agreement, Mr. Bauer concluded "that Ogden City has taken steps to bring Fair Air LLC's operation into compliance."  (Letter from Mr. Bauer to Mr. Rich (Dec. 3, 2004), attached as Ex. 53 to Pl.'s Opp'n Mem. to Defs.' Mot. Summ. J.)  The FAA did took no further steps to pursue this violation.  Mr. Bauer's letter also highlighted some concerns about whether Fair Air had complied with the insurance requirements of Title 8.  And Mr. Bauer noted deficiencies in Fair Air's proposal to conduct business at OHA and Fair Air's inadequate parking space.

Mr. Rich responded by letter dated January 7, 2005.  On that same date, Fair Air submitted a new proposal correcting the previous deficiencies.  And shortly thereafter, Fair Air obtained worker's compensation insurance, resolving one of the problems flagged by Mr. Bauer. Later that same month, Fair Air and Ogden City entered into a supplemental lease for additional parking spaces.  Since that time, Ogden City has not required Fair Air to do anything more.  And in his affidavit, Mr. Rich states that it is his "belief as airport manager at OHA that Fair Air met the requirements to operate as a commercial operator at OHA at least by January 31, 2005." (Rich Aff. ¶ 7 (attached as Ex. 1 to Ogden City Defs.' Mem. Supp. Mot. Summ. J.).)

On January 19, 2005, Mr. Rich sent Mr. AbuHaidar a letter identifying areas of OK3's non-compliance, noting concerns about the adequacy of OK3's parking, concerns about OK3's fuel farm, and lack of proof of Worker's Compensation insurance for OK3's employees.  By letter dated January 29, 2005, Mr. AbuHaidar disputed any noncompliance by OK3.  No further action was taken by any of the Ogden City Defendants.

**STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In conducting our analysis, we view all of the facts in the light most favorable to the non-movant and reasonable inferences from the record must be drawn in favor of the non-moving party." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007). "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991)).

**ANALYSIS**

**I.     The Ogden City Defendants' Motion for Summary Judgment**

The Ogden City Defendants have moved for summary judgment on OK3's three claims under 42 U.S.C. § 1983 alleged in the First and Second Claims for Relief in the First Amended Complaint.

To succeed in an action brought under § 1983, OK3 must "'show that they have been deprived of a right secured by the Constitution and the laws of the United States,'" and that the Ogden City Defendants "'deprived them of this right acting under color of any statute of the [state].'" Johnson v. Rodrigues, 293 F.3d 1196, 1202 (10th Cir. 2002) (quoting Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978)).

Because the Ogden City Defendants do not contest that the alleged constitutional

7

deprivations occurred under color of state law, the question for the court is whether the Ogden

City Defendants violated OK3's constitutional rights.[4]

     A.     <u>The Substantive Due Process Claim</u>[5]

In the First Claim for Relief, OK3 alleges that the Ogden City Defendants violated OK3's

substantive due process rights "[b]y denying to OK3 an equal opportunity to compete for

business at OHA."  (Am. Compl. ¶ 149(i).)  OK3 maintains that "the infringement is the total

abdication of the Government Defendants' regulatory responsibilities and the concerted actions

taken to harass, to harm, and eventually destroy OK3's business in order to benefit favored

operators."  (Pl.'s Opp'n Mem. to Ogden City Defs.' Mot. Summ. J., 50-51.)

But OK3 has presented no evidence that the Ogden City Defendants sought to "destroy"

OK3's business.  And it is clear that the Ogden City Defendants did not deny OK3 the

opportunity to compete for business at OHA.  What OK3 is really arguing is that the Ogden City

Defendants violated OK3's substantive due process rights by allowing Fair Air to operate when it

had not fully complied with Title 8.

Even assuming, without deciding, that OK3 had a protectible property interest in its FBO

business at OHA, the Ogden City Defendants had a rational basis for not shutting down Fair Air

---

     [4]Mr. Rich, in his individual capacity, has claimed qualified immunity against all of these alleged constitutional violations.  Because the first step of qualified immunity requires a court to determine whether a constitutional violation has occurred, the court will first address all of the constitutional violations together.  <u>See</u> <u>McCook v. Spriner Sch. Dist.</u>, 44 Fed. Appx. 896, 902 (10th Cir. 2002) ("If the [plaintiffs] fail to meet their threshold burden of demonstrating a constitutional violation, 'there is no necessity for further inquiries concerning qualified immunity.'") (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).

     [5]OK3 has only brought a substantive—not procedural—due process claim.  ((Pl.'s Opp'n Mem. to Ogden City Defs.' Mot. Summ. J., 59 n.7) ("OK3 did not intend to assert a procedural due process violation in its First Cause of Action . . . .").)

for Title 8 violations when the company was starting out.  Powers v. Harris, 379 F.3d 1208, 1215 (10th Cir. 2004) ("As a state economic regulation that does not affect a fundamental right, . . . [courts] apply[] rational-basis review."); Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1210 (10th Cir. 2000) ("[S]ubstantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision."); Hennigh v. City of Shawnee, 155 F.3d 1249, 1257 (10th Cir. 1998) ("Assuming, arguendo, that Plaintiff did have a fundamental property interest in his rank which was subject to substantive due process protection, we conclude that Defendants' termination of that interest was not arbitrary or without a rational basis."); Curtis v. Okla. City Pub. Sch. Bd. Of Educ., 147 F.3d 1200, 1215 (10th Cir. 1998) ("Assuming a protected property interest, '[s]ubstantive due process requires only that termination of that interest not be arbitrary, capricious, or without a rational basis.'") (quoting Brenna v. S. Colo. State Coll., 589 F.2d 475, 477 (10th Cir. 1978); Theis v. Denver Bd. of Water Comm'rs, 149 F.3d 1191 (Table), No. 97-1040, 1998 WL 317579, at *3 (10th Cir. June 12, 1998) ("'When a fundamental right is not implicated, the substantive due process guarantee ensures merely that state action which deprives an individual of his liberty or property must have some rational basis in fact; the reason for the deprivation must be rationally related to a legitimate governmental purpose.'") (quoting Harvey Brown & Sarah V. Kerrigan, 42 U.S.C. § 1983: The Vehicle for Protecting Public Employees' Constitutional Rights, 47 Baylor L. Rev. 619, 645 (1995)).

Faced with two options—namely, shut down Fair Air for noncompliance with Title 8 or work with the company to bring it into compliance—the Ogden City Defendants chose to bring the company into Title 8 compliance.  The City decided to expand OHA, which would increase

the City's revenue.[6]  And to accommodate the incremental business, the City needed additional

service providers at OHA.  Terminating any developing business because of imperfect

compliance with Title 8 would stifle service providers and hamper the opportunities for growth at

the airport.  Accordingly, the Ogden City Defendants had a rational basis for guiding a new

company towards compliance instead of closing the operation.

Consequently, the court GRANTS the Ogden City Defendants' Motion for Summary

Judgment on the substantive due process claim in the First Claim for Relief.

B.    The Equal Protection Claim

The First Claim for Relief also alleges that the Ogden City Defendants violated OK3's

equal protection rights by allowing Fair Air to operate even though it had not fully complied with

Title 8, a claim similar to OK3's substantive due process claim.

OK3's equal protection claim is not based on membership in a protected class, so the

"class-of-one" equal protection analysis applies.  See Vill. of Willowbrook v. Olech, 528 U.S.

562, 564 (2000).  Under this analysis, OK3 must show two elements: (1) "that the plaintiff 'has

been intentionally treated differently from others similarly situated,'" Grubbs v. Bailes, 445 F.3d

1275, 1282 (10th Cir. 2006) (quoting Olech, 528 U.S. at 564); and (2) "a class-of-one plaintiff

must show that the official action was objectively irrational and abusive . . . ."  Jicarilla Apache

Nation v. Rio Arriba County, 440 F.3d 1202, 1211 (10th Cir. 2006).

_____

[6]The Ogden City Defendants did not need to establish that this was their actual
motivation at the time.  Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 367 (2001) ("[T]he
State need not articulate its reasoning at the moment a particular decision is made. Rather, the
burden is upon the challenging party to negative 'any reasonably conceivable state of facts that
could provide a rational basis for the classification.'") (quoting Heller v. Doe, 509 U.S. 312, 320
(1993)).

10

Under the first step, OK3 must prove that the government imposed a burden on it "without imposing it on those who are similarly situated in material respects." Id. at 1209. In applying this step, "courts have imposed exacting burdens on plaintiffs to demonstrate similarity in class-of-one cases" because "it is exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable." Id. at 1213. Consequently, the Tenth Circuit mandates "the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class." Jennings v. City of Stillwater, 383 F.3d 1199, 1214 (10th Cir. 2004). To satisfy this element, "[p]laintiffs will have an easier time stating a claim where there are few variables in play and the set of potentially similarly situated individuals is well-defined." Id. Alternatively, "[w]hen multiple variables are in play . . . the difference in treatment can be the product of a number of considerations, conscious or otherwise, many of them legitimate." Id.

Under the second step, OK3 must show that the Ogden City Defendants acted without any conceivable legitimate basis. Jicarilla, 440 F.3d at 1209 ("In the paradigmatic class-of-one case, a public official inflicts a cost or burden on one person without imposing it on those who are similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive.") (emphasis added). To satisfy this heavy burden, the circuit has explained that class-of-one plaintiffs "must prove that they were 'singled out for persecution due to some animosity,' meaning that the actions of [defendants] were a 'spiteful effort to get [plaintiffs] for reasons wholly unrelated to any legitimate state activity.'" Mimics, Inc. v. Vill. of Angel Fire, 394 F.3d 836, 849 (10th Cir. 2005) (quoting Bartell v. Aurora Pub. Sch., 263 F.3d

11

1143, 1149 (10th Cir. 2001)).[7]

Assuming, without deciding, that OK3 and Fair Air were similarly situated in all material respects, OK3 suffered no disparate treatment because the Ogden City Defendants responded similarly to Fair Air and to OK3's noncompliance with Title 8.  Bartell v. Aurora Pub. Sch., 263 F.3d 1143, 1149 (10th Cir. 2001) ("Bartell's equal protection claim fails, however, because it rests on nothing more than bare assertions of differential treatment that, even if true, are insufficient to show a spiteful effort to 'get' him.").  In 2002 and 2003, OK3 fell substantially behind on its lease and fee payments.  Title 8 mandates that "[e]ach fixed based operator shall, on a monthly basis, pay or collect and remit the landing fees" and the FBO must "[r]emit the amount of the landing fees billed or collected, on or before the fifth of the month . . . ."  Title 8, § 8-5-1. Because it is undisputed that OK3 failed to pay these fees, it is equally undisputed that OK3 failed to comply with Title 8.  Despite this noncompliance, the Ogden City Defendants did not immediately shut down OK3.  On the contrary, all evidence indicates that the Ogden City Defendants developed a viable payment schedule so OK3 could catch up on its delinquent payments.  Accordingly, OK3 cannot claim disparate treatment simply because the Ogden City Defendants did not enforce every requirement of Title 8 against Fair Air when that company was in its infancy.

Further, even if Fair Air's violations of Title 8 exceeded those of OK3—and this difference could support the conclusion that the two entities were treated differently—the Ogden

---

[7]The Tenth Circuit has not conclusively determined whether subjective malice and ill will are necessary components of the second step.  See Jicarilla, 440 F.3d at 1210 ("Even if subjective ill will is a necessary condition for a class-of-one claim, it is not a sufficient one.") (emphasis added).

City Defendants had a rational basis for giving Fair Air time to comply fully with Title 8.  As discussed previously, the Ogden City Defendants could have decided that it was in the City's best interests to increase business at OHA in order to increase the City's revenue.  Accordingly, there is a rational basis for bringing into compliance a new company that offers additional services at OHA instead of forcing the company to cease operation, limiting the services offered at the airport.

Consequently, OK3 cannot sustain a class-of-one equal protection claim and the court GRANTS the Ogden City Defendants' Motion for Summary Judgment on this claim of the First Claim for Relief.

C.    The First Amendment Retaliation Claim

In the Second Claim for Relief, OK3 alleges the Ogden City Defendants violated its First Amendment rights by threatening OK3 in response to OK3's complaints about Fair Air's noncompliance with Title 8.

The Tenth Circuit has developed a three-part test for considering First Amendment retaliation claims: (1) the plaintiff was engaged in constitutionally protected activity; (2) the defendant's response would have chilled an ordinary person from continuing in that constitutionally protected activity; and (3) the defendant's response was substantially motivated by the exercise of the constitutionally protected activity.  Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000).

First, the parties do not dispute that OK3 satisfies the first element.  The company was engaged in constitutionally protected activity when OK3 and its attorney expressed concern about Fair Air's compliance with Title 8 in their letters sent to Mr. Rich in July through October of

2004.  Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990) ("It is also one aspect of the First

Amendment right to petition the government for redress of grievances."); (See Letter from Mr.

Swindle to Mr. Rich (Oct. 5, 2004), attached as Ex. 65 to Pl.'s Opp'n Mem. to Defs.' Mot.

Summ. J.; Letter from Mr. AbuHaidar to Mr. Rich (July 28, 2004), attached as Ex. 64 to Pl.'s

Opp'n Mem. to Defs.' Mot. Summ. J.)

 Second, OK3 satisfies the second element because a reasonable jury could find that Mr.

Rich's threats would chill an ordinary person.  "The focus . . . is upon whether a person of

ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled."  Smith

v. Plati, 258 F.3d 1167, 1177 (10th Cir. 2001).  To satisfy this objective standard, the Tenth

Circuit has "stated that '[a]ny form of official retaliation for exercising one's freedom of speech,

including prosecution, threatened prosecution, bad faith investigation, and legal harassment,

constitutes an infringement of that freedom.'"  Worrell, 219 F.3d at 1212 (quoting Lackey v.

County of Bernalillo, No. 97-2265, 1999 WL 2461, at *3 (10th Cir. Jan.5, 1999)); see also

Lackey v. County of Bernalillo, No. 97-2265, 1999 WL 2461, at *3 (10th Cir. Jan.5, 1999)

(quoting DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir. 1990)) ("'An act taken in retaliation

for the exercise of a constitutionally protected right is actionable under § 1983 even if the act,

when taken for a different reason, would have been proper.'").

 A reasonable jury could conclude that an ordinary person would have been chilled in this

case because the Ogden City Defendants engaged in a bad faith investigation and legal

harassment after OK3 complained about Fair Air.  Shortly after OK3's attorney sent a letter to

Mr. Rich expressing concerns about Fair Air's Title 8 compliance, Mr. Rich sent a letter to OK3

asserting that the company had failed to pay fees owed to the City.  And three months later, in

January of 2005, Mr. Rich accused OK3 of having inadequate parking space, expressed concerns

about contamination from OK3's fuel farms, and indicated OK3 did not provide proof of

Worker's Compensation insurance.  Mr. AbuHaidar immediately responded and denied Mr.

Rich's accusations.  (See Letter from Mr. AbuHaidar to Mr. Rich (Jan. 29, 2005), attached as Ex.

77 to Pl.'s Opp'n Mem. to Defs.' Mot. Summ. J.)  Because Mr. Rich never responded to Mr.

AbuHaidar—and never explained his basis for making these allegations regarding OK3's

compliance which are not supported by the record—Mr. Rich's letters could be viewed as

harassment and official retaliation.  Additionally, Mr. AbuHaidar testified that in response to his

complaints to Ogden City, he was threatened with "'[d]on't ask questions'" or else Mr. Rich

would "'find every problem that you have.'"  (AbuHaidar Dep. 108, attached as Ex. 1 to Pl.'s

Opp'n Mem. to Defs.' Mot. Summ. J.)  And there is evidence that Mr. Rich told Mr. AbuHaidar

in December of 2004 that "you don't want to throw rocks in a glass house" after Mr. AbuHaidar

had requested records from Ogden City.  (Eric Hill Notes (Dec. 29, 2004), attached as Ex. 47 to

Pl.'s Opp'n Mem. to Defs.' Mot. Summ. J.)

 OK3 has satisfied the second element of the First Amendment retaliation claim.

 And third, the factfinder should decide whether Mr. Rich's statements were motivated by

OK3's complaining about Fair Air's noncompliance.  Worrell, 219 F.3d at 1212 ("We have

required proof . . . . that 'defendant's adverse action was substantially motivated as a response to

the plaintiff's exercise of constitutionally protected conduct.'") (quoting Lackey, 1999 WL 2461,

at *3).

 Unquestionably, when retaliatory conduct "is motivated by a desire to discourage

protected speech or expression violates the First Amendment and is actionable under § 1983."

Wolford v. Lasater, 78 F.3d 484, 488 (10th Cir. 1996).  The "central question to be addressed in such an action was 'whether retaliation for the exercise of First Amendment rights was the cause of the prosecution and the accompanying injuries to plaintiff.'"  Beedle v. Wilson, 422 F.3d 1059, 1066 (10th Cir. 2005) (quoting Wolford, 78 F.3d at 488).  But the Tenth Circuit has recognized motive is often best left to the trier of fact.  "'If plaintiffs claim that some conduct on the part of defendant abridged their First Amendment rights, summary judgment may be precluded because questions concerning defendant's motives or knowledge must be determined.'"  Seamons v. Snow, 206 F.3d 1021, 1028 (10th Cir. 2000) (quoting 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2732.2 at 153-54, 177 (3d ed.1998)).

While the timing of Mr. Rich's letters and statements may support an inference of retaliatory motive, the factfinder should decide whether or not to arrive at that inference.  Hall v. U.S. Dep't of Labor, 476 F.3d 847, 859 (10th Cir. 2007) (citation omitted) ("A factfinder may infer retaliatory motive from the fact that a hostile action is taken shortly after an employee's protected activity but it is not required to do so.") (emphasis added).  Regardless of whether the factfinder ultimately determines that Mr. Rich was motivated by OK3's exercise of free speech, the issue cannot be disposed against OK3 at summary judgment.

Consequently, OK3 can satisfy each of the three elements of First Amendment retaliation, and the claim will not be dismissed on summary judgment.

D.      Qualified Immunity

Mr. Rich contends that he is entitled to qualified immunity on all claims which name him in his individual capacity: the substantive due process claim, the equal protection claim, and the

First Amendment retaliation.

Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "When evaluating a claim of qualified immunity, we 'must first determine whether the plaintiff has alleged the deprivation of a constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" Marshall v. Columbia Lea Reg'l Hosp., 474 F.3d 733, 739-40 (10th Cir. 2007) (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)).

Having ruled that there was no constitutional violation of either substantive due process or equal protection, the court need not consider further whether Mr. Rich is entitled to qualified immunity on those claims.

But OK3 has established a viable First Amendment retaliation claim, so the court must decide whether the right was clearly established under the second step of the qualified immunity analysis. "In assessing whether the right was clearly established, we ask whether the right was sufficiently clear that a reasonable government officer in the defendant's shoes would understand that what he or she did violated that right." Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." Mimics, 394 F.3d at 842 (quoting Roska v. Peterson, 328 F.3d 1230, 1248 (10th Cir. 2003)).

Because the case law of this circuit had clearly established that the First Amendment

protects against retaliation for the exercise of free speech, Mr. Rich is not entitled to qualified immunity.  Id. at 848 ("It has long been clearly established that the First Amendment bars retaliation for protected speech and association."); Smith, 899 F.2d at 947 ("It is also one aspect of the First Amendment right to petition the government for redress of grievances."); see also Casey, 473 F.3d at 1333-34 ("It has long been established law in this circuit that when a public employee speaks as a citizen on matters of public concern to outside entities despite the absence of any job-related reason to do so, the employer may not take retaliatory action."); Shrum v. City of Coweta, 449 F.3d 1132, 1139 (10th Cir. 2006) ("[T]he unconstitutionality of retaliating against an employee for participating in a union [is] clearly established.'") (quoting Morfin v. Albuquerque Pub. Sch., 906 F.2d 1434, 1439 (10th Cir. 1990)); Seamons, 206 F.3d at 1030 (disallowing qualified immunity for high school coach accused of retaliating against his player for refusing to apologize to team); Malik v. Arapahoe County Dep't of Soc. Servs., 191 F.3d 1306, 1315 (10th Cir. 1999) ("[A]n individual's First Amendment rights of association and free speech are violated when a police officer retaliates against her for retaining an attorney.").

Accordingly, the Ogden City Defendants' Motion for Summary Judgment that Mr. Rich is Entitled to Qualified Immunity on the First Amendment retaliation claim is DENIED.

## II.    The Fair Air Defendants' Motion for Summary Judgment

The Fair Air Defendants have moved for summary judgment on the state tort claim for intentional interference with OK3's contracts and prospective business relations.  Because the facts viewed most favorably to OK3 could satisfy the three elements of the tort claim, the court DENIES the Fair Air Defendants' Motion for Summary Judgment.

The tort of intentional interference with economic relations has three elements: "the

plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff."  Leigh Furniture & Carpet Co. v. Isom, 657 P.2d 293, 304 (Utah 1982).

First, the Fair Air Defendants do not dispute that they intentionally interfered with OK3's business relations.  Fair Air attracted business from OK3's customers, establishing a reasonable inference that Mr. Fair solicited business from OK3.  See St. Benedict's Dev. Co. v. St. Benedict's Hosp., 811 P.2d 194, 201 (Utah 1991) ("[S]olicitation, being an intentional interference with prospective contractual relations, satisfies the first element of the Leigh Furniture test."); (Meyers Dep. 206, attached as Ex. O to Fair Air Defs.' Mem. Supp. Mot. Summ. J.) ("These customers of OK3, are now customers of Fair Air."))  But in order for such conduct to shift from simple competition to tortious interference, OK3 must satisfy the other two elements.

Second, the Fair Air Defendants' noncompliance with Title 8 satisfies the improper means element.  "To establish . . . improper means, a plaintiff must show 'that the defendant's means of interference were contrary to statutory, regulatory, or common law or violated an established standard of a trade or profession.'"[8]  Anderson Dev. Co. v. Tobias, 2005 UT 36, ¶ 20, 116 P.3d 323 (quoting Pratt v. Prodata, Inc., 885 P.2d 786, 787 (Utah 1994)).

---

[8]A plaintiff may satisfy the second element by showing either improper means or improper purpose.  St. Benedict's Dev. Co. v. St. Benedict's Hosp., 811 P.2d 194, 201 (Utah 1991) ("Improper means is an alternative to improper purpose under the second prong of the Leigh Furniture test").  Because OK3 can satisfy improper means based on the problems with Title 8 compliance, the court does not address the subjective requirements of the improper purpose analysis.  Anderson Dev. Co. v. Tobias, 2005 UT 36, ¶ 20, 116 P.3d 323 ("To establish . . . improper purpose, . . . . [T]he plaintiff must show that the defendant's 'predominant purpose was to injure the plaintiff.'") (quoting Leigh Furniture, 657 P.2d at 307).

Title 8 is an ordinance which lays out specific requirements for conducting business at OHA.  The Fair Air Defendants do not dispute that they did not strictly adhere to those requirements when starting to offer services at OHA.  Specifically, the Fair Air Defendants offered services at OHA before obtaining the necessary lease and permit, without obtaining all the requisite insurance, and without adequate parking space.  The facts viewed most favorably to OK3 suggest that OK3 could satisfy the second element of the tort.

And third, facts in the record demonstrate the causal link between Fair Air's failure to comply with Title 8 and OK3's losing its customers.  According to the deposition testimony of Paul Meyers, the Fair Air Defendants saved money by not complying with Title 8, allowing Fair Air to charge artificially low prices to its customers.  (Meyers Dep. 207, attached as Ex. O to Fair Air Defs.' Mem. Supp. Mot. Summ. J.) ("It's my opinion that Fair Air not being compliant gave them a competitive advantage, an unfair competitive advantage over OK3; and as a result they didn't incur the same costs.  Their cost basis was lower and they were able to pass that through in lower pricing.  And by virtue of that lower pricing, they were able to attract and develop a customer base."); id. at 200 ("I have rendered an opinion that [Fair Air's] costs were less because they didn't have to comply.").)  Mr. Meyers also testified these lower prices well could be the reason that OK3 customers moved their business to Fair Air.  (Id. at 206 ("These customers of OK3, are now customers of Fair Air.").)

Because the facts viewed most favorably to OK3 can satisfy each of the three elements of the intentional interference claim, the court DENIES the Fair Air Defendants' Motion for Summary Judgment.  The court declines to rule on the dates which govern damages against the various Fair Air Defendants.

**CONCLUSION**

For the foregoing reasons, the court DENIES in part and GRANTS in part the Ogden City

Defendants' Motion for Summary Judgment (dkt. #178).  And the court DENIES the Fair Air

Defendants' Motion for Summary Judgment (dkt. #180).

DATED this 30th day of August, 2007.

BY THE COURT:

TENA CAMPBELL
Chief Judge